**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| KATHRYN BORN,<br>f/k/a KATHRYN GREENE,<br><br>Plaintiff,<br><br>v.<br><br>ABBVIE, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. |

**COMPLAINT**

The Plaintiff KATHRYN BORN, f/k/a KATHRYN GREENE, (hereinafter referred to as "BORN") and for her complaint against the Defendant ABBVIE, INC. (hereinafter referred to as "ABBVIE") states:

**COUNT I –**
**RETALIATORY DISCHARGE**

1. BORN is a resident and citizen of Los Alamos, New Mexico.

2. At all times relevant hereto, ABBVIE was a corporation organized and existing under the laws of the State of Illinois with its principal place of business at 1400 Sheridan Road, North Chicago, Illinois 60064.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 since the matter in controversy is between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 since the complained of conduct occurred in this District.

5. In June, 2018, BORN was hired as a contractor by ABBVIE to work as part of the instructional design team in ABBVIE's Clinical Development Department.

6. In or about February, 2019, ABBVIE hired BORN as an employee to the position of Instructional Designer in the Clinical Development Department.

7. During the time that she was in this position, BORN received satisfactory and good performance reviews and accolades from her superiors.

8. In November, 2021, BORN was promoted to the position of Training and Communication Manager in ABBVIE's Research and Convergence Hub (hereinafter referred to as "ARCH").

9. The purpose of this department was to develop the productivity of the drug pipeline which meant the number of drug candidates that advanced through the full research and development lifecycle and achieved market approval and commercial success.

10. By virtue of this promotion, BORN reported to Rachel Lawrence (hereinafter referred to as "LAWRENCE").

11. By late 2022, matters within the ARCH team had become antagonistic.

12. Approximately fifty percent (50%) of the ARCH team left the department and LAWRENCE refused to share data analytics with BORN.

13. LAWRENCE would not provide the data analytics that BORN needed in her position.

14. In 2023, LAWRENCE continued to hide the user data with regard to dozens of tools, apps and dashboards.

15. As a result, resources were wasted at ABBVIE to further develop software that reflected poor user adoption and failed to make the purchased data sets readily accessible to researchers.

16. In April, 2023, BORN and LAWRENCE were promoted to ABBVIE's Convergence team.

17. BORN kept her title and began performing training and communication for Convergence and not for ARCH.

18. In 2024, BORN began reporting to Bawa Bhupinder (hereinafter referred to as "BHUPINDER"), Director of Convergence.

19. In September, 2024, BORN created an AI card catalog to make the ARCH data sets searchable.

20. In February, 2025, BORN returned to work from medical leave.

21. Upon her return, she was determined to make one last attempt to have the Convergence initiative actually accomplish something and she proposed a way to fix the ARCH data sets with an AI data "swamp cleaning" method that she designed.

22. Upon BORN presenting this information, BHUPINDER accused her of being negative and said that her representations of low data analytic numbers were lower than they actually were.

23. He refused to review or even consider BORN's proposal.

24. Moreover, Howard Jacob (hereinafter referred to as "JACOB"), Senior VP, also refused to consider BORN's proposal

25. In or about March, 2025, Alan Bajramovic (hereinafter referred to as "BAJRAMOVIC"), a Data Analyst for ABBVIE, wrote to HR and indicated that BORN should be fired because she was the one who was alerting the team that his Explore Dashboards had been unstable and largely inoperable for over two years.

26. In May, 2025, Tina Neely (hereinafter referred to as "NEELY"), a Human Resources representative for ABBVIE, indicated that she would be filing an ethics violation on BORN's behalf concerning the pay-to-play padded analytics scheme.

27. In July, 2025, BORN used ABBVIE's OEC ethics hotline and reported again the pay-to-pay padded analytics scheme orchestrated by LAWRENCE and BAJRAMOVIC.

28. At the time, Christina Gabriel (hereinafter referred to as "GABRIEL"), a member of ABBVIE's Office of Ethics and Compliance, began the official investigation.

29. JACOB became aware of BORN's reporting.

30. At all times relevant hereto, it was the public policy of the State of Illinois that companies not engage in fraudulent conduct in its business practices.

31. JACOB then contacted Dmitriy Kolodin (hereinafter referred to as "KOLODIN"), BORN's supervisor, to discuss possible termination of BORN by virtue of her reporting the pay-to-pay padded analytics scheme.

32. As a direct result of JACOB's instruction, on August 9, 2024, KOLODIN placed BORN on a performance improvement plan (hereinafter referred to as "PIP") for forty-five (45) days.

33. It was impossible for BORN to complete the PIP within the forty-five (45) days given to her by JACOB.

34. Moreover, it consisted of tasks that were not actionable.

35. On September 9, 2025, BORN submitted a two-year blueprint for her AI system which outlined the creation of an "AI Ad Hoc Knowledge Graph".

36. KOLODIN's response to it was that he did not understand this blueprint.

37. BORN presented a training module that was complete and ready to go.

38. On September 12, 2025, BORN met with KOLODIN and Dina Mutawi (hereinafter referred to as "MUTAWI") in ABBVIE's Business Human Resources Department.

39. At this meeting, MUTAWI advised BORN that she was terminated even though the forty-five (45) day PIP had not concluded.

40. MUTAWI's claimed reason for terminating BORN was nothing but a pretext for the fact that the company was retaliating against BORN for reporting the pay-to-pay padded analytics scheme.

WHEREFORE the Plaintiff KATHRYN BORN requests that this Court enter judgment in her favor and against the Defendant ABBVIE, INC. as follows:

i. Awarding her compensatory damages in the amount in excess of $50,000.00;

ii. Awarding her punitive damages in an amount to be proven at trial; and

iii. Awarding her costs and such other relief as this Court may deem appropriate.

THE PLAINTIFF DEMANDS TRIAL BY JURY.

Respectfully submitted,

/s/ Joel F. Handler
Joel F. Handler (#1115812)
One E. Wacker Drive, Suite 2505
Chicago, Illinois 60601
(312) 832-0008
jhandler@handlerlawgroup.com
Attorney for the Plaintiff,
KATHRYN BORN